NOT FOR PUBLICATION (Document No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| GREGORY W. CALL and KATHLEEN CALL, | : |
| Plaintiffs, | : Civil No. 09-6561 (RBK/AMD) |
| v. | : **OPINION** |
| DANIEL A. CZAPLICKI, ESQUIRE, DANIEL A. CZAPLICKI & ASSOCS., PC, BERNARD J. AUDETTE, KEITH MCGUIRE, NEW ENGLAND SECURITIES CORP., NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND FINANCIAL, CREATIVE FINANCIAL GROUP, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises out of alleged legal malpractice during the formation of a business agreement. Presently before the Court is the Motion to Dismiss by Defendants Daniel A. Czaplicki, Esquire and Daniel A. Czaplicki & Associates (collectively the "Czaplicki Defendants") (Doc. No. 6). For the reasons discussed below the Motion is granted in part and denied in part.

I.     **BACKGROUND**

Plaintiffs Gregory W. Call and Kathleen Call are husband and wife. Defendant Daniel A. Czaplicki is an attorney licensed to practice law in the Commonwealth of Pennsylvania and the State of Delaware. Defendant Daniel A. Czaplicki & Associates, P.C. is a Pennsylvania professional corporation and Mr. Czaplicki's employer. The remaining Defendants are interrelated. For example, Defendant Creative Financial Group is a Pennsylvania partnership engaged in the business of selling life insurance, stocks, bonds, mutual funds, financial products, and financial services. Bernard J. Audette was an employee and/or agent of the Creative Financial Group, as was Keith McGuire. In turn, the Creative Financial Group was the agent of Defendants New England Securities Corporation, New England Financial, and New England Life Insurance Company. These Defendants' involvement in the present dispute is as follows.

Plaintiff Gregory Call and non-parties Brian Horne and Rex D. Mouser were shareholders and owners of Mart, Inc., a Delaware corporation, Casie Protank, Inc., a New Jersey corporation, and Rezultz, Inc., another New Jersey corporation. Gregory Call was the majority shareholder/owner of each of these entities. In June of 2003, Call, Horne, and Mouser consulted with Audette and the Creative Financial Group regarding the purchase of life insurance policies and other financial products that would provide for three things: 1) the buy-out of their respective interests in the four businesses upon their deaths; 2) the establishment of life insurance trusts that would have the effect of avoiding the payment of any unnecessary taxes by their respective estates; and 3) the establishment of a retirement plan that would allow Call, Horne, and Mouser to avoid the payment of unnecessary taxes with their retirement savings and income.

Around the same time, Audette and the Creative Financial Group advised Gregory Call

that there were pending changes to the IRS Code that would eliminate certain tax shelters that were then available to Call, his business partners, and their businesses. Audette and the Creative Financial Group further advised that to take advantage of these tax shelters, it was necessary to immediately form a Delaware limited liability partnership. Thus, Audette and the Creative Financial Group referred Call to the Czaplicki Defendants for the purpose of obtaining legal advice regarding formation and administration of these tax shelters.

     Call then met with Daniel Czaplicki in June 2003. Czaplicki advised Call that it would be necessary to prepare a shareholders' agreement and a partnership agreement to facilitate formation and administration of the desired tax shelters. On June 10, 2003, Call, Horne, and Mouser executed a shareholder agreement and a separate partnership agreement between Mart, Inc., Casie Protank, Inc., and Rezultz, Inc. for the formation of Oceanfront Leasing, LLP, a Delaware limited liability partnership. At the same time that Czaplicki was representing Gregory Call with regard to the two agreements, he also simultaneously represented Horne, Mouser, Casie Protank, Mart, and Rezultz, despite what Call alleges were actual adverse interests of the parties.

     Gregory Call alleges that Czaplicki's legal advice and work was faulty on several fronts, including failing to prepare and perform with the requisite standard of care, failing to advise of the conflict of interest, and failing to advise that he was not licensed to practice in New Jersey. Plaintiffs claim that as a result of the Czaplicki's negligent representation, Horne was able to use the shareholders' agreement to block and/or attempt to block the sale of Casie Protank, Mart, and Rezultz, despite his being only a ten percent owner of each of those corporations. With that power, Plaintiffs allege that Horne was able to demand a larger portion of the sales price of those entities than he would have otherwise been entitled to. Plaintiffs further allege that because of

Czaplicki's faulty legal advice, Gregory Call lost the ability to utilize a tax loss carry forward in the approximate amount of $8,600,000.00.

Plaintiffs also allege that they were injured by various acts of the remaining Defendants that are mostly irrelevant to disposition of the present Motion. The claim that is relevant, however, is the allegation that as part of the "Wealth Advisory Services" provided by Audette, McGuire, the Creative Financial Group, New England Securities Corp, New England Financial, and New England Life, Gregory Call was referred to the Czaplicki Defendants. Plaintiffs allege that all Defendants were negligent in failing to, among other things, investigate Czaplicki's abilities and failing to reveal the Defendants' precise relationship with each other.

On June 10, 2009, Plaintiffs filed a complaint in the Superior Court of New Jersey for Gloucester County. Subsequently on November 4, 2009, Plaintiffs filed the First Amended Complaint, which contains seven counts: 1) legal malpractice, 2) breach of fiduciary duty, 3) negligence, 4) breach of contract, 5) breach of warranty, 6) violation of the New Jersey Consumer Fraud Act, and 7) fraud. Only Counts One through Three are against the Czaplicki Defendants, while the remaining Defendants are parties to all seven counts.

All Defendants removed the civil action to this Court on December 31, 2009. The Czaplicki Defendants moved to dismiss on January 19, 2010. All parties have now briefed the Motion and it is ripe for review.

**II.    STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

### III.  DISCUSSION

The Czaplicki Defendants seek relief on several substantive fronts.  They argue that 1) Kathleen Call cannot establish a basis for a duty owed, 2) Plaintiffs cannot state a claim for legal malpractice, 3) Plaintiffs cannot state a claim for breach of fiduciary duty, 4) the negligence claim is barred by the economic loss doctrine, 5) punitive damages are improper, and 6) Plaintiffs' request for certain kinds of damages (non-monetary damages, consequential damages, treble damages, lost profits, and other such relief as the court may deem equitable, proper and just) must be struck.  See Def. br. at 6-16.  But the Czaplicki Defendants also first raise two

procedural issues that the Court must address before turning to the substantive challenges: 1) improper venue, and 2) choice of law.  See Def. br. at 3, 5; Def. reply at 1.

      A.      Venue

The Czaplicki Defendants challenge venue (seemingly under Rule 12(b)(3), though they do not cite it in their brief), arguing that venue is improper in the District of New Jersey because all Defendants do not reside in the same state, all events giving rise to this dispute arose in the Eastern District of Pennsylvania, and the Defendants are subject to personal jurisdiction in either the Eastern District or the District of Massachusetts.  See Def. br. at 4.  Plaintiffs chiefly respond that venue is proper in this diversity action in the District of New Jersey because a substantial part of the events giving rise to the claims occurred here.  See Pl. br. at 5.  On the basis of the present record, the Czaplicki Defendants have failed to meet their burden to show that venue is improper.

Rule 12(b)(3) permits dismissal for improper venue.  In a suit based on diversity, venue is only proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  The moving party under Rule 12(b)(3) bears the burden of showing that venue is improper.  Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982).

In this matter it is undisputed that all the Defendants do not reside in the same state, thus § 1391(a)(1) is of no import and the inquiry is solely as to § 1391(a)(2).  In the Czaplicki

Defendants' moving papers, they merely assert in summary fashion that all of the meaningful events occurred in Pennsylvania. This cursory unsupported statement is woefully insufficient to satisfy their burden under Rule 12(b)(3). Moreover, in support of their brief in opposition, Plaintiffs attached the affidavit of Plaintiff Gregory Call in which he repeatedly states that all of the events giving rise to this dispute occurred in New Jersey. See Call affid. at ¶¶ 4, 7, 9, 12, 29. Contrasting that affidavit with the Czaplicki Defendants' summary statement and subsequent silence in the reply brief, the Court is convinced that venue is proper in the District of New Jersey.

Therefore, the Czaplicki Defendants' Motion to Dismiss under Rule 12(b)(3) is denied.

**B.     Choice of Law**

The Czaplicki Defendants also raise the issue that this dispute is perhaps not governed by the laws of New Jersey, but by the laws of Pennsylvania. See Def. br. at 5-6; Def. reply at 1. Defendants also note that, at least as to the analysis regarding "legal causation, actual loss, economic loss doctrine, absence of duty and punitive damages," New Jersey and Pennsylvania law are in accord. See Def. br. at 6. Plaintiffs respond that since the Czaplicki Defendants agree that no conflict exists between the two states' laws, at least for purposes of the pending Motion the Court need only apply New Jersey law. See Pl. br. at 9. The Court agrees and will apply New Jersey law only to the present dispute without deciding whether it ultimately governs.

In a diversity case, a district court must apply the choice of law provisions of the forum state. Woessner v. Air Liquide Inc., 242 F.3d 469, 472 (3d Cir. 2001) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Cent. Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995)). Because this Court is located in New Jersey, New Jersey's

choice of law rules apply.  To resolve choice of law disputes arising out of tort, New Jersey utilizes the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws (1971) (the "Second Restatement").  P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 457 (N.J. 2008).  The most significant relationship test "directs courts to apply the law of the jurisdiction with the 'most significant relationship' to the issue before the court.  In making this determination, a court is required to consider all the contacts that each jurisdiction has with the issue."  Id. at 459 (citing Earl M. Maltz, Do Modern Theories of Conflict of Laws Work?  The New Jersey Experience, 36 Rutgers L.J. 527, 530 (2005)).  The New Jersey conflicts analysis involves two steps.  First, a court must determine if an actual conflict exists between the potentially applicable laws.  Id. at 460; RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco, No. 09-cv-00431 (FLW), 2009 WL 2580354, at *5 (D.N.J. Aug. 19, 2009) (citing P.V.).  If no conflict exists, then the court applies the law of the forum state and ends the conflicts inquiry.  See Rowe v. Hoffman-La Roche, Inc., 917 A.2d 767, 771 (N.J. 2007).  If a conflict does exist, then the court must weigh the factors enumerated in the Second Restatement that correspond to the cause of action.  RBC Bank, 2009 WL 2580354, at *5 (citing P.V.).

In this matter, the inquiry is rather short.  All parties agree that no conflict exists between Pennsylvania and New Jersey law that would affect the resolution of the present Motion.  Compare Def. br. at 6, with Pl. br. at 9.  Further, since the parties have dedicated little briefing on what conflicts might exist and which state has the most significant relationship, the issue of choice of law is not ripe for disposition.  Therefore, the Court will reserve judgment on which state's laws ultimately govern the entire case, and will proceed to review the pending Motion solely under New Jersey law.

### C. Kathleen Call

Turning to the substantive challenges, the Court notes first that Kathleen Call joins in all three claims against the Czaplicki Defendants: legal malpractice, breach of fiduciary duty, and negligence. The Czaplicki Defendants insist that none of Kathleen Call's claims are viable since she did not share an attorney-client relationship and there exists no other basis for a duty to her. See Def. br. at 15. Plaintiffs respond that Kathleen Call was owed a duty under the rule articulated in Petrillo v. Bachenberg, 655 A.2d 1354, 1359-60 (N.J. 1995),[1] specifically that "attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys' representations and the non-clients are not to [sic] remote from the attorneys to be entitled to protection." See Pl. br. at 22. Plaintiffs then note that as set forth in the Gregory Call affidavit, Czaplicki gave negligent advice to Gregory Call that induced both him and his wife Kathleen to purchase a life insurance policy referenced in Counts Four through Seven. See Pl. br. at 22. The Court finds that Kathleen Call has failed to state any claims for relief in Counts One through Three.

As Plaintiffs correctly point out, Petrillo does stand for the proposition that attorneys may owe a limited duty to non-clients where the attorney makes certain representations. See 655 A.2d at 1359-60. The New Jersey Supreme Court has articulated that the Petrillo rule requires that an attorney make an "invitation to rely" and requires that the plaintiff actually does rely. See Banco Popular N. Am. v. Gandi, 876 A.2d 253, 265 (N.J. 2005); see also Skypala v. Mortg. Elec. Registration Sys., Inc., 655 F. Supp. 2d 451, 461 (D.N.J. 2009) ("[A]n attorney may be liable to a

---

[1] Plaintiffs actually cite to the lower court opinion, 263 N.J. Super. 472 (App. Div. 1993), but the quoted language in the brief comes from the New Jersey Supreme Court's opinion.

third party when he invites that party's reliance on his work or knows or should know that the party will rely on the attorney's work.").

In the First Amended Complaint, there exists no allegations whatsoever that the Czaplicki Defendants invited Kathleen Call to rely on any representation or that she actually relied on anything that they represented. These shortcomings are fatal to her request for relief. See Banco, 876 A.2d at 266; Skypala, 655 F. Supp. 2d at 461. Plaintiffs have seemingly attempted to remedy the shortcomings in the First Amended Complaint through reliance on Gregory Call's affidavit, but pleadings cannot be amended in such a fashion. Cf. Commw. of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 580 (D.N.J. 2002). As such, Plaintiff Kathleen Call has failed to state any claim against the Czaplicki Defendants.

Therefore, the Court grants the Motion as to those claims by Kathleen Call in Counts One, Two, and Three, and the remaining analysis below pertains only as to those claims by Gregory Call.

### D. Legal Malpractice

The Czaplicki Defendants next assert that Plaintiff Gregory Call failed to state a claim for legal malpractice, chiefly claiming that he failed to allege that he sustained damages as a result of any breach, and claiming that he has not alleged any flawed advice or a material mistake. See Def. br. at 8-9. Plaintiff responds with a thorough recitation of the elements of a legal malpractice claim and with a lengthy discussion about how each element is pled in the First Amended Complaint. See Pl. br. at 16. The Court is persuaded that Plaintiff Gregory Call has stated a plausible claim.

Legal malpractice consists of three elements: 1) existence of an attorney-client relationship creating a duty of care, 2) breach of that duty, and 3) proximate causation. McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060, 1070 (N.J. 1996)). An attorney generally owes a duty to perform diligently and with a high degree of "fidelity and good faith." Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001). To fulfill his duties, an attorney must exercise "'that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.'" Id. (quoting St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 443 A.2d 1052, 1060-61 (N.J. 1982)). The essence of a legal malpractice claim is "negligent professional performance." See McGrogan, 771 A.2d at 1193.

The Czaplicki Defendants' challenge is perfunctory at best and not based on a critical reading of the First Amended Complaint. Each of the essential elements of a plausible claim for legal malpractice are set out therein: 1) duty, see First Amd. Compl. at ¶¶ 27-29; 2) breach, see First Amd. Compl. at ¶¶ 34-37; and 3) proximate causation, see First Amd. Compl. at ¶¶ 40-45. Defendants perhaps issued their challenge under the mistaken belief that Plaintiff had to detail and establish each of the elements of the claim in the pleading. See Def. br. at 8 ("Plaintiffs have not established that they sustained damages attributable to the Czaplicki defendants."), at 9 ("The allegations of the first amended complaint did not established that Czaplicki provided flawed advice or made a material mistake during preparation of the shareholder agreement."), at 9 ("Plaintiffs did not establish that they suffered a compensable loss to serve as recoverable damages."). However, under Rule 8, detailed pleading is not required, nor is a plaintiff required to *establish* anything; rather the party need only plead enough facts to state a plausible claim. Cf.

Fowler, 578 F.3d at 213 (holding in context of Rehabilitation Act claim, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element'").

Therefore, the Court must deny the Czaplicki Defendants' Motion to Dismiss as to Gregory Call's legal malpractice claim in Count One.

### E. Breach of Fiduciary Duty

The Czaplicki Defendants next challenge Plaintiff Gregory Call's claim of breach of fiduciary duty in Count Two. They posit that Call has not stated a claim because he has not alleged that the Czaplicki Defendants favored the interest of another, engaged in self-interested activity, acted in a disloyal manner, and they allege that he has failed to alleged damages flowing from any breach. See Def. br. at 11. Plaintiff counters that he has stated a claim since he alleged that the Czaplicki Defendants breached their duty to him by representing numerous parties with adverse interests. See Pl. br. at 16. On the face of the First Amended Complaint, it is clear that Plaintiff Gregory Call has stated a claim for relief.

A party standing in a fiduciary relationship with another is liable for harm resulting from a breach of the duty imposed by the relationship. F.G. V. MacDonell, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Torts § 874 (1979)). The "essence" of the relationship is one party placing trust in another who is in a dominant or superior position. Id.; McKelvey v. Pierce, 800 A.2d 840, 859 (N.J. 2002) (citing F.G.). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." F.G., 696 A.2d at 704 (citing § 874 cmt. a). A

breach of fiduciary duty claim is an independent tort from a legal malpractice claim. See Packard-Bamberger & Co., Inc. v. Collier, 771 A.2d 1194, 1203 (N.J. 2001).

As with the Czaplicki Defendants' challenge to the legal malpractice claim, their challenge to the breach of fiduciary duty claim is more cursory than earnest. Review of the First Amended Complaint shows that Plaintiff has alleged facts to support a fiduciary relationship, see First Amd. Compl. at ¶¶ 47-48, an alleged breach of that relationship through simultaneous representation of multiple clients with adverse interests, see First Amd. Compl. at ¶ 49, and resultant damages, see First Amd. Compl. at ¶¶ 41, 46, 50. Thus Plaintiff Gregory Call has stated a claim.

Therefore, the Court must deny the Czaplicki Defendants' Motion as to Gregory Call's breach of fiduciary duty claim in Count Two.

### F. Negligence & the Economic Loss Doctrine

Count Three purports to state a claim for negligence, which the Czaplicki Defendants charge is barred by the economic loss doctrine. See Def. br. at 11. Plaintiff responds that the doctrine does not stop the present claim because, inter alia, the Czaplicki Defendants owed a duty separate and apart from any contractual one. See Pl. br. at 20. The Court agrees.

The economic loss doctrine prohibits a party from recovering in tort for economic injuries that the party is only entitled to because of a contract. Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 308 (D.N.J. 2009). Stated differently, a tort claim arising from breach of a duty owed only because of a contract rather than by law is barred. See Satiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002). As the New Jersey Supreme Court has noted, the law imposes independent duties on lawyers separate and apart from contractual obligations, which give rise to

13

claims sounding in tort.  Id. at 280-81.

The Czaplicki Defendants have not directed the Court's attention to even a single case employing the economic loss doctrine to bar a negligence claim arising out of an attorney-client relationship.  Given the rule articulated in Satiel, this failure is no surprise.  Seemingly Plaintiff has articulated a claim based on a failure to exercise the degree of knowledge, skill, and ability that the law imposes on attorneys separate and apart from any contract.  See, e.g., First Amd. Compl. at ¶ 58.  The Court is persuaded that these allegations are sufficient at the motion to dismiss stage to survive.

Therefore, the Court denies the Czaplicki Defendants' Motion as to Gregory Call's negligence claim in Count Three.

### G.      Punitive Damages

The Czaplicki Defendants next focus their attack on Plaintiff's request for punitive damages in Counts One, Two, and Three.  They allege that punitive damages are improper because Plaintiff has not alleged sufficient conduct to support such relief.  See Def. br. at 15. Plaintiff responds by noting that his claims involve the allegation that Czaplicki was not licensed to practice in New Jersey, and such practice by him was perhaps sufficiently intentional to warrant punitives.  See Pl. br. at 22-23.  The Court grants the Motion.

Punitive damages are available in New Jersey under the Punitive Damages Act, N.J. Stat. Ann. § 2A:15-5.9 et seq.  Under the Act, punitive damages may be awarded when a plaintiff proves by clear and convincing evidence that he suffered harm from a defendant's acts or omissions that were "actuated by actual malice or accompanied by a wanton and willful disregard for persons who foreseeably might be harmed by those acts or omissions."  § 2A:15-5.12(a); see

also <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>, 477 A.2d 1224, 1230 (N.J. 1984) ("To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another."). The Plaintiff's burden of proof is not satisfied by proof of any degree of negligence. § 2A:15-5.12(a)

The First Amended Complaint is bereft of any factual allegations that any of the Czaplicki Defendants' acts were actuated by actual malice or accompanied by wanton and willful disregard of harm to others. In fact, the three causes of action at most allege that the Czaplicki Defendants acted negligently. But no where does even an inference of an evil-minded act exist in the present pleading.

Therefore, the Court grants the Czaplicki Defendants' Motion with respect to the punitive damages claims in Counts One, Two, and Three.

### H. Other Damages

Finally, the Czaplicki Defendants move to dismiss Plaintiff's request for certain kinds of damages (non-monetary damages, consequential damages, treble damages, lost profits, and other such relief as the court may deem equitable, proper and just). <u>See</u> Def. br. at 16. The Court can deny this challenge in short order. The Czaplicki Defendants' entire support for their argument is a lone citation to Federal Rule of Civil Procedure 8(a)(3), which merely provides that a pleading must contain a demand for relief. This Rule does not show that Plaintiff's request is improper. The Czaplicki Defendants have failed to show any legal basis why Plaintiff's boilerplate request for relief should be struck.

Therefore, the Court will deny the Motion with respect to the non-punitive damages

sought.

## IV. CONCLUSION

For the foregoing reasons, the Czaplicki Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to the claims by Plaintiff Kathleen Call in Counts One, Two and Three, and **GRANTED** as to the request for punitive damages in Counts One, Two, and Three. The Motion to Dismiss for improper venue is **DENIED**. The Motion is further **DENIED** as to Gregory Call's legal malpractice claim in Count One, his breach of fiduciary duty claim in Count Two, and his negligence claim in Count Three. Finally, the Motion is **DENIED** with respect to the non-punitive damages sought. An appropriate Order shall follow.

Date: 7-28-10                                                   /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge