**NOT FOR PUBLICATION**                    (Doc. Nos. 33, 34, 37, 39, 45, 59, 61)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
GREGORY W. CALL and KATHLEEN        :
CALL,                               :
                                    :
            Plaintiffs,             :   Civil No. 09-6561 (RBK/AMD)
                                    :
      v.                            :   **OPINION**
                                    :
DANIEL A. CZAPLICKI, ESQ.,          :
DANIEL A. CZAPLICKI &               :
ASSOCIATES, P.C., BERNARD J.        :
AUDET, KEITH MAGUIRE, THE           :
CREATIVE FINANCIAL GROUP,           :
NEW ENGLAND SECURITIES CORP.,       :
NEW ENGLAND FINANCIAL, NEW          :
ENGLAND LIFE INSURANCE              :
COMPANY, JOHN DOES 1-10, and        :
ABC CORPORATIONS 1-10,              :
                                    :
            Defendants.             :
_____ :

**KUGLER**, United States District Judge:

      This matter arises out of the allegedly fraudulent sale of a variable life insurance policy. Presently before the Court are: (1) the motions by Plaintiffs Gregory and Kathleen Call for leave to file the Second Amended Complaint (Doc. Nos. 59, 61); (2) the motion by Plaintiffs for reconsideration of the Court's Opinion and Order dated September 16, 2010, (Doc. No. 33); (3) the cross-motion by Plaintiffs for reconsideration of the Court's Order and Opinion dated September 16, 2010 (Doc. No. 39); (4) the motion by Defendant Keith Maguire to dismiss the First Amended Complaint (Doc. No. 45); (5) the motion by Defendants New England Securities Corp., New England Financial, and New England Life Insurance Co. (collectively "the New

England Defendants") for reconsideration of the Court's Opinion and order dated September 16, 2010 (Doc. No. 34); (6) and the motion by Defendant Creative to dismiss the First Amended Complaint (Doc. No. 37). As discussed below, this Opinion addresses all of the pending motions.

## I. BACKGROUND[1]

This litigation is the result of a deal to sell life insurance gone bad. In brief, Audet and Maguire sold a variable life insurance policy to Plaintiffs for the benefit of Mr. Call's daughter, Aja Call. Plaintiffs claim that Audet and Maguire represented that the policy would provide $4 million worth of life insurance coverage for a one-time payment of $100,000.00. In particular, Plaintiffs claim that Audet and Maguire represented that they would place $100,000.00 into a trust that would generate enough interest each year to pay the premiums for a $4 million variable life insurance policy. Shortly after Plaintiffs transferred $100,000.00, they discovered that the $100,000.00 lump-sum payment was insufficient to pay the premiums for their life insurance policy. As a result, Plaintiffs commenced this lawsuit.[2]

The First Amended Complaint alleges the following claims: legal malpractice (Count I); breach of fiduciary duty (Count II); negligence (Count III); breach of contract (Count IV); breach of warranty (Count V); violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-1 et seq. (Count VI); and common law fraud (Count VII). On January 20, 2010,

---

[1] The basic facts of this case are outlined in detail in the Court's Opinion dated September 16, 2010 (Doc. No. 30). To assist the reader, the Court will rehash the relevant parties. Plaintiffs Gregory W. Call and Kathleen Call are husband and wife. Defendant Daniel A. Czaplicki is an attorney licensed to practice law in the Commonwealth of Pennsylvania and the State of Delaware ("Czaplicki"), and Defendant Daniel A. Czaplicki & Associates, P.C. is a Pennsylvania professional corporation and Czaplicki's employer (collectively "the Czaplicki Defendants"). The remaining Defendants are interrelated. Defendant Creative Financial Group ("Creative") is a Pennsylvania partnership engaged in the business of selling life insurance, stocks, bonds, mutual funds, financial products, and financial services. Bernard J. Audet was an employee and/or agent of Creative ("Audet"), as was Keith Maguire ("Maguire"). Creative was the agent of the New England Defendants.

[2] Plaintiffs' also made specific allegations regarding financial and legal advice they received from Czaplicki, Audet and Maguire. Those allegations are outlined in detail in the Court's September 16, 2010 Opinion.

Audet and the New England Defendants moved to dismiss the First Amended Complaint. (Doc. No. 7).

On September 16, 2010, the Court entered an Order and Opinion: (1) granting the New England Defendants' motion to dismiss Counts Three, Four, Five, and Seven of the First Amended Complaint; (2) denying the New England Defendants' motion to dismiss Count Six of the First Amended Complaint; (3) and granting Defendant Audet's motion to dismiss Counts Three, Four, Five, Six, and Seven of the First Amended Complaint. (Doc. No. 31).

On September 29, 2010, Plaintiffs moved for reconsideration of the Court's Order and Opinion dated September 16, 2010. Plaintiffs argue that the "learned professional" exception to the New Jersey Consumer Fraud Act ("NJCFA") – which exempts insurance brokers from liability under the NJCFA for acts within the scope of their licenses to sell insurance – does not apply to Audet, because Audet was not licensed to sell variable life insurance when he sold Plaintiffs' a variable life insurance policy. (Doc. No. 33). On September 30, 2010, the New England Defendants also moved for reconsideration of the Court's Opinion and Order dated September 16, 2010. The New England Defendants argue that the Court should amend the Order dated September 16, 2010 to reflect the Court's decision to dismiss the NJCFA claim against them. (Doc. No. 34).

Thereafter, on October 8, 2010, Creative moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Creative argued that (1) because Plaintiffs failed to assert a cognizable claim for negligence under New Jersey law against Audet and the New England Defendants, the Court should also dismiss Plaintiff's negligence claim against Creative; (2) the Court should dismiss Plaintiffs' breach-of-contract claim against Creative for the same reasons that the Court dismissed Plaintiffs' breach of contract claims against the New

3

England Defendants and Audet; (3) because a life insurance policy is not a "good" under Article II of the Uniform Commercial Code, Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing; and (4) because the Court dismissed the common law fraud and NJCFA claim against Audet and the New England Defendants, the Court should also dismiss those claims against Creative. (Doc. No. 37). Finally, on November 1, 2010, Maguire moved to dismiss the First Amended Complaint, arguing that he is exempt from liability under the NJCFA because he was a licensed insurance broker when he sold the variable insurance policy to Plaintiffs. (Doc. No. 45).

Plaintiffs opposed Maguire's motion to dismiss, and filed a cross-motion for leave to file the Second Amended Complaint. (Doc. Nos. 59, 61). Although the First Amended Complaint and the Second Amended Complaint contain many of the same allegations, the Second Amended Complaint contains a few notable differences.

First, the Second Amended Complaint contains two new claims: Count Four – Breach of Fiduciary Duty against Audet, Maguire, and Creative, and Count Five – Negligence against Audet, Maguire, Creative and the New England Defendants. The Second Amended Complaint abandons Plaintiffs' breach-of-warranty claim and restates Plaintiffs' breach-of-contract claim as a claim for breach of fiduciary duty against the Czaplicki Defendants. The Second Amended Complaint also contains additional factual allegations concerning the Sixth and Seventh Counts of the First Amended Complaint – Violation of the New Jersey Consumer Fraud Act and common law fraud, respectively. In this Opinion, the Court will address each of the pending motions (Doc. Nos. 33, 34, 37, 39, 45, 59, 61).

## II.   DISCUSSION

### A. Plaintiffs' Motion for Leave to File the Second Amended Complaint

Plaintiffs seek leave to file the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a court should grant leave to amend unless equitable considerations render it unjust. Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Those considerations include undue delay, bad faith, dilatory motive, prejudice to the non-movant, and futility. Winer Family Trust v. Queen, 503 F.3d 319, 330 (3d Cir. 2007); Arthur, 434 F.3d at 204; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. William Fauver et al., 213 F.3d 113, 115 (3d Cir. 2000). A court determines whether an amendment is futile by taking all the proposed pleadings as true and viewing them in the light most favorable to the plaintiff. Winer Family Trust, 503 F.3d at 330. In other words, to determine whether a proposed amendment would be futile, the court applies the standard used on a motion to dismiss under Rule 12(b)(6). Medpointe Health Care, Inc. v. Hi Tech Pharm. Co. Inc., 380 F.2d 457, 462 (D.N.J. 2005).

#### 1. Undue Delay

Defendants argue that the Court should deny Plaintiffs' motion to amend because it will unduly delay adjudication of this matter. Specifically, Defendants highlight the fact that Plaintiffs filed the motion for leave to amend nearly a year and a half after filing the Complaint. Defendants claim that they are prejudiced by Plaintiffs' delay because they will "incur repetitive costs that could have been avoided if Plaintiff had been more diligent in their complaint drafting

5

[sic] the first place." (Br. in Opp'n to Pls.' Motion to Amend filed by Defs.' Audet, New England, and Creative at 11-12).

As previously mentioned, a district court may deny a plaintiff leave to amend the complaint due to undue delay. Queen, 503 F.3d at 330. However, "[d]elay alone . . . is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party." Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978) (emphasis added).

Under Rule 15, the term prejudice "means undue difficulty in [defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." California Pub. Employees' Retirement Sys. v. Chubb Corp., 394 F.3d 126, 171 (3d Cir. 2004). In order to persuade the district court to deny a plaintiff's request to amend, the non-moving party must do more than merely claim prejudice. Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981). The non-moving party must show that "it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." Id. at 426 (citing Deakyne v. Comm'rs of Lewes, 416 F.2d 290, 300 n.19 (3d Cir. 1969)).

The Court is not persuaded that granting Plaintiffs leave to amend will unduly prejudice Defendants. Defendants claim that they will "incur repetitive costs that could have been avoided if Plaintiff had been more diligent in their complaint drafting [sic] the first place." (Br. in Opp'n to Pls.' Motion to Amend filed by Defs.' Audet, New England, and Creative at 11-12). However, Defendants fail to identify any of the "repetitive" costs that they will incur as a result of Plaintiffs' amended pleading. Discovery has just begun. There is no evidence that the parties have exchanged substantial documentation or taken numerous depositions. In fact, as Plaintiffs

6

note in their brief, "[w]ith the sole exception of the Czaplicki defendants, none of the defendants have engaged in any discovery whatsoever." (Pls.' Reply Br., at 5). See Schindler Elevator Corp. v. Otis Elevator Co., No. 09-560, 2009 WL 1351578, at *3 (D.N.J. May 14, 2009) (finding defendant not prejudiced because parties had yet to exchange documents, take depositions, or file any dispositive motions). Moreover, the Scheduling Order entered by Magistrate Judge Donio states that "the time within which to seek amendments to the pleadings or to add new parties will expire on January 28, 2011." (Doc. No. 32). Plaintiffs filed the motion for leave to amend on December 7, 2010. (Doc. No. 61). The fact that Plaintiffs filed the motion for leave to amend within the time constraints imposed by the Scheduling Order further supports Plaintiffs' argument that the Defendants will not be prejudiced if the Court grants Plaintiffs leave to amend. Thus, Defendants' argument that granting Plaintiffs leave to amend the Complaint is prejudicial is unpersuasive.

### 2. Futility

#### a. Negligence

Count Three of the Second Amended Complaint alleges that "[t]he Czaplicki Defendants . . . breached their duty of care to [] plaintiff[s] by failing to maintain adequate amounts of legal malpractice insurance to cover the foreseeable damages that the plaintiff might suffer as the result of said defendants' failure to exercise a reasonable degree of knowledge, skill, and ability employed by other members of the legal profession." (Second Am. Compl. ¶ 68).

Defendants claim that Count Three (Negligence) of the Second Amended Complaint is futile. Specifically, the Czaplicki Defendants argue that the Court should deny Plaintiffs leave to amend because the Second Amended Complaint asserts a new theory of negligence outside of the applicable statute of limitations. The Czaplicki Defendants argue that Plaintiffs' claim that

the New England Defendants negligently failed to maintain adequate malpractice insurance is untimely because the statute of limitations for negligence claims in New Jersey is six years, and Plaintiffs made their negligence claim more than six years after the events that gave rise to this litigation.[3] In response, Plaintiffs argue that their negligence claim is timely because: (1) under New Jersey law, a cause of action accrues on the day when the right to institute a lawsuit first arises; and, (2) under Federal Rule of Civil Procedure 15(c)(B), their negligence claim "relates back" to the date of the First Amended Complaint. (Pls.' Reply Br. at 13-14).

The Court finds that Count Three of the Second Amended Complaint is futile because Plaintiffs' claim that Defendants failed to maintain adequate malpractice insurance is non-justiciable. It is axiomatic that a plaintiff "must demonstrate some injury, or threat thereof 'of sufficient immediacy and ripeness to warrant judicial intervention.'" Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 699 (3d Cir. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 516 (1975)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. U.S., 523 U.S. 296, 300 (1998) (internal quotations omitted).

Plaintiff's negligence claim is not ripe. In order for Plaintiffs to maintain their negligence action against Defendants based upon the theory that Defendants failed to maintain adequate malpractice insurance, the Court must speculate about whether Plaintiffs will recover

---

[3] N.J. Stat. Ann. 2A:14-1 provides in relevant part:

> Every action at law for trespass for real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of action shall have accrued.

8

damages from Defendants and whether Defendants have the financial resources necessary to compensate Plaintiffs. Therefore, because a determination by this Court that Plaintiffs will suffer damages as a result of Defendants' inability to pay damages requires speculation and conjecture, Plaintiffs' negligence claim is not ripe. Cf. Med. Assurance Coo, Inc. v. Hellman, 610 F.3d 371, 375 (7th Cir. 2010) ("[A] duty-to-indemnify [claim is] will not be ripe until liability has been established.") (quoting Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003)).[4]

### b. Fraud

The elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intent that the other party rely on it, (4) reasonable reliance by the other party, and (5) resulting damages. Triffin v. Automatic Data Processing, Inc., 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007). A plaintiff must plead common law fraud with particularity under Federal Rule of Civil Procedure 9(b). Fredericko v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Thus, a party claiming fraud must "plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

---

[4] Count Three of the Second Amended Complaint also alleges that Czaplicki participated in Audet's "marketing pitches." (Second Am. Compl. ¶ 63). Specifically, Plaintiffs allege that although "Czaplicki was not licensed to sell insurance in the State of New Jersey, Czaplicki participated in Audet's 'marketing pitches' aimed at selling Call insurance; and assisted Audet in making certain presentations." (Id.). However, although Czaplicki allegedly participated in Audet's "marketing pitches," Plaintiffs fail to allege that Czaplicki's participation in the "marketing pitches" proximately caused them harm. In New Jersey, legal malpractice consists of three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060, 1070 (N.J. 1996)). Here, Plaintiffs do not allege that Czaplicki told Plaintiffs that they could purchase a $4 million variable life insurance policy for one lump-sum payment of $100,000.00, or that Czaplicki was present when Audet told Plaintiffs that they could purchase the $4 million life insurance policy for $100,000.00. Moreover, Plaintiffs do not allege that Czaplicki knew that Audet represented to Plaintiffs that they could purchase $4 million worth of life insurance with a lump-sum payment of $100,000.00. Thus, because Plaintiffs failed to allege that Czaplicki proximately caused their injury, Plaintiffs' negligence claim based upon the theory that Czaplicki participated in the marketing pitches fails to state a plausible cause of action.

With respect to the fourth element of a fraud claim, a party must show that their reliance on the defendant's misrepresentations was reasonable. In re Resorts, Int'l, Inc., 181 F.3d 505, 509 (3d Cir. 1999). Reliance is unreasonable when a party to a life insurance contract relies upon statements that contradict the written policy itself. See In re Nw. Mut. Life Ins. Co. Sales Practices Litig., 70 F. Supp. 2d 466, 486 (D.N.J. 1999) ("[T]he general rule in New Jersey has been that an insured is under a duty to examine his insurance policies; if the terms disclosed by such an examination are inconsistent with his desires, he is required to notify the company of the inconsistency and of his refusal to accept the policy in the proffered condition.") (quoting Martinez v. John Hancock Mut. Life Ins. Co., 367 A.2d 904, 909 (N.J. Sup. Ct. App. Div. 1976)). In New Jersey "one who sues an insurance company in fraud and deceit for the acts of its agent, and who could have protected himself by an examination of the policy, is under an obligation to do so." Nat'l Premium Budget Plan Corp. v. Nat'l Fire Ins. Co. of Hartford, 234 A.2d 683, 716 (N.J. Super. Ct. Law Div. 1967), aff'd 254 A.2d 819 (N.J. Super. Ct. App. Div. 1969).

In the Court's opinion dated September 16, 2010, the Court stated:

> In light of the clear language of the policy, Plaintiffs' claim that they justifiably relied upon Defendants' representations that the investment trust would generate enough income to pay the policy premiums, and that the $100,000.00 front-loaded premium would be sufficient to pay the premiums on the policy, fails as a matter of law.

(Doc. No. 30, at 27). The Court noted that the express terms of the life insurance policy required Plaintiff to pay a $100,000.00 premium on a yearly basis to cover the cost of the policy. (Id. at 26). The Court relied on the fact that Plaintiffs did not allege that they received a copy of the life insurance policy after they signed the life insurance policy and transferred $100,000.00 from the

10

Merrill Lynch account.[5]  In the Second Amended Complaint, Plaintiffs make the following allegations:

- "Audet and Maguire represented . . . to [Plaintiffs] that if they paid a one (1) time "front-loaded premium" in the amount of $100,000.00, that the life insurance trust would generate sufficient income to pay the premiums on the $4,000,000.00 life insurance policy in perpetuity . . . ," (Second Am. Compl. ¶ 245);

- "At the time [Defendants] made the aforementioned representations . . . to the plaintiffs, [Defendants] knew they were false," (id. ¶ 246);

- "[Defendants] made the aforementioned recommendations . . . with the intention that [Plaintiffs] would rely upon the same by purchasing the life insurance policy in question," (id. ¶ 248);

- "[Plaintiffs] relied on [Defendants'] representations regarding the terms of the life insurance policy . . . ," (id. ¶ 255);

- "Although the express written language of the insurance policy itself indicates that an annual premium of $100,000.00 was required, the plaintiffs were not provided with a copy of the life insurance policy in question until after it had lapsed on August 29, 2006," (id. ¶ 283);

- "As a direct and proximate result of the various frauds committed by [Defendants], [Plaintiffs] have . . . suffer[ed] . . . damages including . . . loss of the $151,580.93 paid in premiums . . .," (id. ¶ 282).

Those allegations are sufficient to state a claim for fraud under New Jersey law. Plaintiffs specifically alleged that (1) Audet and Maguire represented that Plaintiffs could purchase $4,000,000.00 worth of life insurance for a one-time payment of $100,000.00; (2) Audet and Maguire knew that a single payment of $100,000.00 was insufficient to pay the life

---

[5] Plaintiffs pointed to an affidavit provided by Plaintiff Gregory W. Call which suggested that Plaintiffs did not receive a copy of the life insurance policy until after they transferred $100,000.00 from the Merrill Lynch account into the investment trust.  (Id. at 27 n. 13).  However, because the motion before the Court was a 12(b)(6) motion, the Court declined to consider Mr. Call's affidavit.  (Id.) (noting that "[i]n evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputably authentic documents if the plaintiff's claims are based upon those documents.") (citing Poling v. K. Hovnanian Enter., 99 F. Supp. 2d 502, 507 (D.N.J. 2000)).

11

insurance premiums,[6] but neglected to inform Plaintiffs of the actual cost of the insurance policy because they intended for Plaintiffs to rely upon those misrepresentations; (3) Plaintiffs relied upon Defendants' misrepresentations; and (4) Plaintiffs suffered damages as a result of Defendants' misrepresentations. Critically, unlike the First Amended Complaint, the Second Amended Complaint alleges that Defendants did not provide Plaintiff with a copy of the life insurance policy before Plaintiffs signed the policy and before Defendants transferred $100,000.00 from Plaintiffs' Merrill Lynch account. (Second Am. Compl. ¶ 264). Thus, unlike the First Amended Complaint, the Second Amended Complaint alleges reasonable reliance. Therefore, because the Second Amended Complaint states a claim for fraud under Federal Rule of Civil Procedure 9(b), Plaintiffs' fraud claim is not futile.

### c. NJCFA Claims Against Audet and Maguire

In <u>Plemmons v. Blue Chip Ins. Serv., Inc.</u>, the New Jersey Superior Court Appellate Division held that "insurance brokers are 'semi-professional[s]' who are excluded from liability under the CFA for the services they render within the scope of their professional licenses." 904 A.2d 825, 833-34 (N.J. Super. Ct. App. Div. 2006). N.J. Admin. Code § 11:17-2.2(c) provides in relevant part:

> No person shall be authorized to transact business regarding contracts on a variable basis unless that person also <u>holds a securities license as required by this State or any other state or Federal law, as applicable</u>. Producers licensed with life authority prior to November 4, 2002, and who hold a securities license may continue to sell variable products until December 31, 2003. These producers shall qualify and apply for licenses as variable life and variable annuity producers by January 1, 2004.

N.J. Admin. Code 11:17-2.2(c) (2003) (emphasis added). Thus, a <u>life insurance broker</u> who

---

[6] Defendants' knowledge is evident in the Second Amended Complaint based on the fact that the language of the life insurance policy makes clear that the policy holder must make yearly payments of $100,000.00. (Pendleton Certif. at 3).

holds a license to sell securities in either the State of New Jersey or under the applicable federal securities laws, is authorized to sell variable life insurance contracts under New Jersey law.

Here, because Audet was authorized to sell variable insurance contracts, he is exempt from liability under the NJCFA. The parties agree that Audet was licensed to sell basic life insurance in New Jersey on August 26, 2003. (See Defs. Br. in Opp'n to Pls.' Mot. for Reconsideration at 3; Pls.' Br. in Supp. of Motion for Reconsideration at 3; Audet Certification of Licensure, available at https://www16.state.nj.us/DOBI_LicSearch/CertOfLicensure.jsp?Refnum=8627570&Liccode=PRODUCER). Moreover, Audet's Financial Industry Regulatory Authority ("FINRA") BrokerCheck report demonstrates that he was licensed to sell general securities in New Jersey and Delaware between June 23, 1989 and August 26, 2003. (Br. in Opp'n to Pls.' Motion for Reconsideration Ex. C). Thus, because Audet was licensed to sell insurance and securities on August 26, 2003, he is exempt from liability under the NJCFA for selling Plaintiffs the variable life insurance policy at issue in this lawsuit.

Moreover, Maguire is also exempt from liability under the NJCFA. Maguire filed a motion to dismiss the First Amended Complaint on November 1, 2010, (Doc. No. 45), arguing that he is exempt from liability under the NJCFA because he is a licensed insurance broker. In support of that motion, Maguire offered (1) a "Licensee Look-up" on the New Jersey Department of Banking & Insurance's website, (Def. Maguire's Br. in Supp. of Mot. to Dismiss McLellan Certif. Ex. D), and (2) a FINRA BrokerCheck report, (Def. Maguire's Reply Br. in Supp. of Mot. to Dismiss McLellan Certif. Ex. A).[7] The "Licensee Look-up" tool on the New

---

[7] Defendant Maguire attached a BrokerCheck Report published by FINRA in support of his motion to dismiss. Generally, on a motion to dismiss, the district court may consider "documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)) (emphasis added). Here, the Court takes judicial notice of Defendant Maguire's

13

Jersey Department of Banking & Insurance website reveals that Maguire was "Qualified as a Non-Resident" life insurance broker on August 26, 2003. (See Maguire Certificate of Licensure, available at https://www16.state.nj.us/DOBI_LicSearch/CertOfLicensure.jsp?Refnum=9472816 &Liccode=PRODUCER (last visited June 17, 2011)). In addition, Maguire's FINRA BrokerCheck report demonstrates that he was licensed to sell securities and variable products on August 26, 2003. Maguire's BrokerCheck report states that he held a FINRA registration with New England Securities from July 1995 until October 2006,[8] and passed the "Investment Company Products/Variable Contracts Representative Examination" and the "Uniform Securities Agent State Law Examination" Category 63 on July 26 and March 31, 1995, respectively. Therefore, because Maguire was licensed to sell life insurance and general securities in New Jersey on August 26, 2003, he is exempt from the NJCFA.

In sum, because Audet and Maguire were licensed to sell variable products on August 26, 2003, they are exempt from liability under the NJCFA. Moreover, because Audet and Maguire are exempt from liability under the NJCFA, the Court will deny Plaintiffs' motion for leave to file an amended NJCFA claim against Audet, Maguire, Creative, and the New England Defendants because amendment is futile. Finally, the Court will grant Maguire's motion to dismiss.

### d.  Plaintiffs' Breach of Fiduciary Duty Claim

Count Four of the Second Amended Complaint alleges that Audet, Creative, and the New England Defendants breached their fiduciary duty to Plaintiffs. Defendants argue that Count

---

BrokerCheck report because it is a public document. See Wilson v. Bodnar, 750 F. Supp. 2d 186, 189 n.5 (D. Me. 2010) (noting that a FINRA report is a public document).

[8] Under federal law, in order to register as a broker-dealer, an individual must become a member of a securities-regulatory organization ("SRO"). See Guide to Broker-Dealer Registration, Division of Trading and Markets (April 2008), available at http://www.sec.gov/divisions/marketreg/bdguide.htm#III (listing requirements of registration as broker-dealer under federal law).

Four is futile because "Plaintiffs have not alleged facts sufficient to suggest that a fiduciary duty existed between them and the New England Defendants and because New Jersey law does not automatically impose fiduciary duties under the facts alleged . . . ." (Defs. Audet, Creative and New England's Br. in Opp'n to Pls.' Mot. for Leave to Am. at 10). Plaintiffs argue that they had a fiduciary relationship with Audet, Maguire, and Creative on August 26, 2003.

Under New Jersey law, "[i]nsurance intermediaries . . . must act in a fiduciary capacity to the client '[b]ecause of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies.'" Aden v. Fortsh, 776 A.2d 792, 799 (N.J. 2001) (quoting Walker v. Atl. Chrysler Plymouth, Inc., 523 A.2d 665, 668 (N.J. Super. Ct. App. Div. 1987)). The fiduciary duty that insurance brokers have to their clients "gives rise to a duty . . . to exercise good faith and reasonable skill in advising insureds." Id. (internal quotations omitted). Thus, "an insurance broker who agrees to procure a specific insurance policy for another but fails to do so may be liable for damages resulting from such negligence." Id. at 801 (citing Rider v. Lynch, 201 A.2d 561 (N.J. Super. Ct. App. Div. 1964)).

In Rider v. Lynch, the Appellate Division provided the following explanation for the duty that insurance brokers owe to their clients:

> [o]ne who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission . . . . If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

Rider, 201 A.2d at 567. In addition, New Jersey courts have identified three circumstances that give rise to a prima facie case of negligence against a broker: (1) the broker fails to issue the

15

insurance policy that he promised to secure; (2) the broker assures the insured that he is covered when he is not; and (3) the broker procures a policy that is materially deficient. Indus. Dev. Assoc. v. F.T.P. Inc., 591 A.2d 682, 684 (N.J. Super. Ct. App. Div. 1991).

The Court finds that Plaintiffs' breach of fiduciary duty claim is not futile. First, the Second Amended Complaint alleges facts sufficient to demonstrate that a fiduciary relationship existed between Plaintiffs and Audet and Maguire. Count Four of the Second Amended Complaint alleges that "[d]uring several of Mr. Call's meetings with Audet, Mr. Call told Audet that he was concerned about providing for [his daughter] after his death due to the fact that he had remarried and had additional children with Kathleen Call." (Second Am. Compl. ¶ 79). The Second Amended Complaint further alleges that "Audet represented . . . to [Plaintiffs] that by paying a 'front-loaded premium' in the total amount of $100,000.00, [a] life insurance trust for Aja's benefit would be able to generate a sufficient amount of net income to pay the premiums on [a] $4,000,000.00 life insurance policy in perpetuity." (Id. ¶ 82). Furthermore, the Second Amended Complaint alleges that Maguire witnessed Plaintiffs sign the insurance contract and assumed responsibility for transferring $100,000.00 from Plaintiffs' Merrill Lynch account to Creative. Those allegations, if true, demonstrate a fiduciary relationship between Plaintiff, Audet, and Maguire under New Jersey law. See Aden, 776 A.2d at 801 (finding that "an insurance broker who agrees to procure a specific insurance policy for another but fails to do so may be liable for damages resulting from such negligence."). Accordingly, Defendants' argument that they had no fiduciary duty is unavailing.

Moreover, the allegations in the Second Amended Complaint are sufficient to state a breach of fiduciary duty claim. As previously mentioned, under New Jersey law, a plaintiff may establish a prima facie case of negligence against a broker if the broker fails to issue the

16

insurance policy that he or she promised to secure. Indus. Dev. Assoc., 591 A.2d at 684. The Second Amended Complaint alleges that Audet and Maguire represented to Plaintiffs that they would invest Plaintiffs' front-loaded premium of $100,000.00 in a manner that would generate enough income to fund an insurance policy worth $4,000,000.00 in perpetuity. Based on that representation, Plaintiffs believed that Defendants would procure a $4,000,000.00 life insurance policy for a lump-sum payment of $100,000.00. Plaintiffs alleged that instead of procuring the promised policy, Defendants procured a policy that required Plaintiffs to pay a $100,000.00 on a yearly basis. Those allegations, if true, demonstrate that Defendants misrepresented the cost of the insurance policy they sold to Plaintiffs and the nature of the investment vehicle used to pay the policy premiums. Those misrepresentations are a breach of Defendants' fiduciary duty to Plaintiffs. Accordingly, the allegations in the Second Amended Complaint are sufficient to establish a claim for breach of fiduciary duty.

### B. Plaintiffs' Motion for Reconsideration (Doc. No. 33)

On September 29, 2010, Plaintiffs filed a motion for reconsideration of the Court's Opinion dated September 16, 2010. Plaintiffs argued that the Court erroneously determined that Audet was not subject to the NJCFA. Specifically, Plaintiffs argued that although Audet possessed a license to sell general life insurance and Audet lacked the credentials necessary to sell variable life insurance products. (See Br. in Supp. of Pls.' Motion for Reconsideration at 5). However, as previously mentioned, Audet was in fact licensed to sell variable life insurance on August 26, 2003. Therefore, Plaintiffs' motion for reconsideration is denied.[9]

---

[9] The Court also notes that Plaintiffs' motion for reconsideration is non-justiciable because "[b]y filing a Second Amended Complaint, Plaintiffs have supplanted the Complaint, thereby rendering any motion for reconsideration advisory." Meserole v. Sony Corp. of Am., Inc., No. 08-8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009); see e.g. Teamsters Local 617 Pension and Welfare Funds v. Apollo Grp., Inc., 690 F. Supp. 2d 959, 964-65 (D. Ariz. 2010) (finding that because plaintiff added new allegations against defendant in the amended complaint, plaintiff's motion for reconsideration of court's dismissal order against same defendants was moot); Operative Plasterers & Cement Masons Intern. Assoc. Local 8 v. AGJ, No. 08-6163, 2009 WL 4796764, at *1 (D.N.J. Dec. 9, 2009)

### C. New England Defendants' Motion for Reconsideration (Doc. No. 34)

On September 30, 2010, the New England Defendants moved for reconsideration of the Court's Opinion dated September 16, 2010. In their moving brief, the New England Defendants cite to the portion of the Court's Opinion dated September 16, 2010 which states: "[b]ecause Plaintiffs have failed to state a claim for fraud, they have also failed to state a claim under the NJCFA," (Doc. No. 30 at 28-29), and argue that notwithstanding that language, the Court mistakenly entered an Order denying their motion to dismiss Count Six of the First Amended Complaint. (Defs.' Br. in Supp. of Mot. for Reconsideration at 3).

Because the Court will grant Plaintiffs' motion for leave to file an amended fraud claim, the New England Defendants' motion for reconsideration is moot. Accordingly, the New England Defendants' motion for reconsideration is denied.

### D. Creative's Motion to Dismiss (Doc. No. 37)

On October 8, 2010, Creative moved to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Creative moved to dismiss Plaintiffs' negligence, fraud, NJCFA, breach of contract, and breach of the implied covenant of good faith and fair dealing claims. As previously noted in this Opinion, Plaintiffs withdrew their breach of contract and breach of the implied covenant of good faith and fair dealing claims. Thus, Creative's motion to dismiss on those grounds is moot. Moreover, as previously mentioned in this Opinion, the Second Amended Complaint alleges a cognizable claim for fraud. Therefore, Defendant Creative's motion to dismiss on that ground is denied. Furthermore, in the

---

(finding plaintiff's motion to amend the complaint rendered moot by its motion for reconsideration); Powell v. Smith, No. 08-1443, 2009 WL 1810770, at *1 (E.D. Cal. June 25, 2009) (finding that "[b]ecause the Court dismissed the Second Amended Complaint with leave to amend and because Plaintiff . . . filed a Third Amended Complaint, the Court will deny the Motion for reconsideration."); Struggs v. Evans, No. 08-1495, 2008 WL 5068522, at *1 (N.D. Cal. Nov. 24, 2008) (denying motion for reconsideration as moot where plaintiff was granted leave to amend). Therefore, Plaintiffs' motion for reconsideration is dismissed.

Second Amended Complaint, Plaintiffs amended their negligence claim and included a claim against Creative for breach of fiduciary duty. Thus, Creative's motion to dismiss Plaintiffs' negligence claim based on the First Amended Complaint is now moot. Finally, because Audet and Maguire are exempt from liability under the NJCFA, the Court will grant Creative's motion to dismiss Plaintiffs' NJCFA claim against Creative based on its vicarious liability for Maguire and Audet's conduct.

### E. Plaintiffs' Cross-Motion for Reconsideration (Doc. No. 39)

On October 12, 2010, Plaintiffs filed a cross-motion for reconsideration of the Court's Opinion dated September 16, 2010. In that motion, Plaintiffs argued that the Court improperly found that they failed to state a claim for violation of the NJCFA. (Pls.' Br. in Supp. of Cross Mot. for Reconsideration at 4). Plaintiffs also argued that the Court overlooked their request for leave to amend the First Amended Complaint to plead fraud with greater particularity. (Id. at 10).

Because both Audet and Maguire are exempt from liability under the NJCFA, and because the Court grants Plaintiffs leave to amend their fraud claim, Plaintiff's cross motion for reconsideration is denied.

### F. Maguire's Motion to Dismiss (Doc. No. 45)

On November 1, 2010, Maguire filed a motion to dismiss the First Amended Complaint. Maguire argued that because the Court "dismiss[ed] Counts Three through Seven of the Plaintiffs' First Amended Complaint as against Mr. Audet, the Court should consider the Decision the 'law of the case' and thereby also dismiss Counts Three through Seven as asserted against Mr. Maguire." (Br. in Supp. of Def. Maguire's Motion to Dismiss at 4).

The Court finds that because Maguire was an insurance broker, licensed to sell variable

life insurance on August 26, 2003, he is exempt from liability under the NJCFA.  Accordingly, Maguire's motion to dismiss Plaintiff's NJCFA claim against Maguire is granted.

### III. CONCLUSION

For the reasons discussed above, the Court will **GRANT** Plaintiffs motion for leave to file the Second Amended Complaint (Doc. Nos. 59, 61).  Because Audet and Maguire are exempt from liability under the NJCFA, the Court will **DENY** Plaintiffs leave to amend to assert an NJCFA claim against Audet, Maguire, and Creative, and **GRANT** Maguire's motion to dismiss Plaintiff's NJCFA claim.  In addition, the Court will **DENY** Plaintiffs' Motion for Reconsideration (Doc. No. 33) and Cross-Motion for Reconsideration (Doc. No. 39).  Moreover, the Court will **DENY** the Motion for Reconsideration filed by the New England Defendants (Doc. No. 34).  Finally, the Court will **GRANT** Creative's motion to dismiss as to Plaintiffs' NJCFA claims, and **DENY** Creative's motion to dismiss as to Plaintiffs' other claims.[10] (Doc. No. 37).  An appropriate Order shall issue today.

Date:  6/23/2011               /s/ Robert B. Kugler
                               ROBERT B. KUGLER
                               United States District Judge

---

[10] Because Audet and Maguire are exempt from liability under the NJCFA, the Court will grant Creative's motion to dismiss as to Plaintiffs' NJCFA claims.  However, the Court denies Creative's motion to dismiss with respect to Creative's other claims.